NOT DESIGNATED FOR PUBLICATION

No. 119,710

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN S. MARSHALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed November 8, 2019. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: John S. Marshall appeals the district court's denial of his presentence motion to withdraw his guilty plea and further claims the district court erred in determining his criminal history score was A by counting his five prior Kansas burglary convictions as person felonies. For the reasons detailed below, we find Marshall's claims are not persuasive. We affirm.

1

Marshall was initially charged with aggravated burglary, aggravated assault, and misdemeanor theft, which allegedly occurred in March 2017. A preliminary hearing occurred and Marshall was bound over for trial. A trial date was set for October 2017. In September 2017, Marshall requested a continuance, and the district court rescheduled his trial for December 4, 2017. Marshall bonded out of jail in October 2017.

On December 4, 2017, Marshall appeared in person and through counsel. His trial attorney told the court Marshall was requesting a continuance "to allow himself to assist in his defense." His trial attorney said: "I've attempted to contact [Marshall] but that contact has failed." Marshall admitted he did not try to contact his trial attorney after he bonded out. The State objected to Marshall's request for a continuance because its witnesses were moving to Britain at the end of the year. The district court granted a one-day continuance. The district court found Marshall's failure to contact his trial attorney after he bonded out of jail was a "significant issue."

After the district court granted the continuance, Marshall stated: "So it's not my right that I have three continuances? I don't have any witnesses here. They won't be here tomorrow either." His trial attorney responded Marshall had not told him about potential witnesses until that day, but they would be "ready to go" for trial the next day. Marshall then expressed dissatisfaction with his trial attorney, stating: "[n]o lawyer prepared to go to court like that"; he is "not my lawyer"; and "I'm not coming in here with him tomorrow."

The next day, the parties advised the district court they had reached a plea agreement. The district court asked Marshall if he was satisfied with his trial attorney and ready to proceed with him as counsel, and Marshall responded, "Yes." Marshall agreed to plead guilty to an amended count of robbery under K.S.A. 2016 Supp. 21-5420(a)(c)(1).

In exchange, the State would dismiss the remaining charges. Marshall waived his right to a preliminary hearing on the amended robbery charge, and the district court proceeded directly to arraignment. The court informed Marshall of the rights he would be giving up by entering his plea, including his right to a jury trial. Marshall said he understood his jury trial rights, he had reviewed the plea agreement with his trial attorney before signing it, and his trial attorney did not pressure him to proceed with the plea agreement.

The district court found Marshall was mentally competent, his guilty plea was freely and voluntarily entered, and it was sufficiently supported by the factual basis provided by the State to which Marshall agreed. The district court then found Marshall guilty. The court ordered a presentence investigation (PSI) report. The PSI initially indicated Marshall's criminal history score was C based on 54 prior convictions, including 5 post-1993 convictions for residential burglary under K.S.A. 21-3715(a) and K.S.A. 2013 Supp. 21-5807 scored as nonperson felonies. Marshall would have had a criminal history score of A if his five post-1993 convictions for residential burglary were scored as person felonies. See K.S.A. 2018 Supp. 21-6809 (defining criminal history categories based on nature and number of prior convictions). For Marshall's most recent burglary conviction, the PSI showed he was convicted under "K.S.A. 21-5807," but it did not indicate whether he was convicted of residential burglary under K.S.A. 2013 Supp. 21-5807(a)(1) or nonresidential burglary under K.S.A. 2013 Supp. 21-5807(a)(2).

In February 2018, the district court called the case for sentencing. Marshall wanted a continuance and when the district court denied his request, he objected to all of the prior convictions listed in his PSI. Based on his objection, the district court continued the sentencing hearing to allow the State time to establish Marshall's criminal history through certified journal entries. In March 2018, the State filed a motion for the district court to recalculate Marshall's criminal history score, arguing his post-1993 convictions for residential burglary listed in the PSI should have been scored as person felonies under *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), making Marshall's criminal history

3

score A rather than C. Marshall responded by filing a pro se motion to withdraw his plea and requesting new counsel be appointed. Marshall argued: (1) he pled guilty under duress; (2) he was lied to during the negotiation phase of his plea; and (3) if he had known his criminal history score was C, he would have "[taken his] chances at trial."

The district court appointed Marshall new counsel. His new attorney filed two supplemental motions to Marshall's pro se motion to withdraw his plea, arguing Marshall's trial attorney did not provide competent counsel because: (1) he "refused [to] explore" Marshall's innocence; (2) he never advised Marshall about a voluntary intoxication defense; and (3) his attorney violated the duty of confidentiality under Rule 1.6 of the Kansas Rules of Professional Conduct (KRPC) (2019 Kan. S. Ct. R. 302) "by disclosing Marshall had not spoken to him for a period of time."

In April 2018, the district court conducted an evidentiary hearing on Marshall's motions to withdraw his plea. Marshall's trial attorney testified about his representation, stating he visited Marshall five times in jail and discussed the facts of the case with him. He said Marshall "indicated that he might have been intoxicated" at the time of the offense, but counsel did not intend to present a voluntary intoxication defense at trial because he believed it was not a viable defense strategy based on the State's evidence.

Marshall also testified. Marshall admitted he did not try to contact his trial attorney after he bonded out of jail. He claimed his trial attorney never discussed the facts of the case with him. When asked whether he told his trial attorney about being intoxicated at the time of the offense, Marshall said: "He didn't ask. I think I told him that. I don't think he ever asked me about it." Similarly, Marshall testified he was not sure whether he told his trial attorney about witnesses he wanted to present at trial.

Marshall also raised his trial attorney's alleged violation of Rule 1.6 of the KRPC as evidence of good cause to allow withdrawal of his plea. Marshall's new attorney asked

4

for a continuance to find caselaw to support his argument trial counsel violated Rule 1.6. The district court granted the request.

In May 2018, the district court proceeded with the evidentiary hearing on the pending motions and denied Marshall's motions to withdraw his plea. It found Marshall's former trial attorney provided competent counsel. Next, the district court found Marshall was not coerced into entering his guilty plea. Regarding the one-day continuance of trial—in response to Marshall's request for time to gather witnesses—the district court noted it would have been "pretty hard to put together witnesses for a day," but Marshall had "every reason to know when the trial was supposed to be." Finally, the district court ruled Marshall's plea was freely and understandingly made. But the court did not make an explicit finding on whether Marshall's trial attorney's statement violated the duty of confidentiality, or, even if it did, whether his statement was evidence of good cause for Marshall to withdraw his plea, stating:

> "I'm not going to conclude one way or the other whether or not [Marshall's trial attorney] may have stepped over the line by informing the Court he had not had any recent contact with [Marshall]. I see where that could potentially in some circumstances be a conflict or be a violation, but as the State points out, even if it is a violation that doesn't necessarily cause me to believe that there is a basis for the withdrawal of the plea."

The district court proceeded to sentence Marshall at the May 2018 hearing. The district court found Marshall's criminal history score was A. Marshall objected to the court's finding on his criminal history score. The district court sentenced Marshall in accordance with this criminal history score to 122 months' imprisonment with a postrelease supervision period of 24 months.

ANALYSIS

Marshall presents two arguments why the district court abused its discretion when it denied his motions to withdraw his plea by finding: (1) his trial attorney provided competent counsel, and (2) Marshall was not coerced into entering his plea.

A defendant can withdraw a plea before sentencing "for good cause shown and within the discretion of the court." K.S.A. 2018 Supp. 22-3210(d)(1); see *State v. Woodring*, 309 Kan. 379, 381, 435 P.3d 54 (2019). Here, Marshall filed his motions before sentencing. This court reviews the district court's good cause determination for an abuse of discretion. See *Woodring*, 309 Kan. at 380.

The district court abuses its discretion when its action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). Here, Marshall alleges an error of fact. An error of fact occurs when "substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *Ward*, 292 Kan. 541, Syl. ¶ 3. It is Marshall's burden to show the district court abused its discretion. *Woodring*, 309 Kan. at 380.

The Kansas Supreme Court has established three nonexclusive factors—often called "*Edgar* factors"—a district court should consider in determining whether a defendant has shown good cause to withdraw a plea: "whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006).

*Marshall's trial attorney was competent.*

Marshall first argues the district court erred in finding his trial attorney provided competent representation. Specifically, he asserts the district court's conclusion is erroneous because his trial attorney failed to file pretrial motions and did not plan to pursue a voluntary intoxication defense if the case went to trial. He further asserts the district court should have considered his trial attorney's testimony indicating he "had no defense in mind other than jury nullification."

To establish good cause for a plea withdrawal based on incompetent representation, a criminal defendant does not need to prove constitutionally ineffective assistance of counsel. See *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). Rather, counsel's "lackluster advocacy" may support the first *Edgar* factor and provide good cause to withdraw a plea before sentencing. *Aguilar*, 290 Kan. at 513. An attorney provides competent representation when he or she advises the defendant of the range of possible penalties and discusses the choices available to the defendant. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

Criminal defendants have the final say over three decisions: (1) what plea to enter; (2) whether to waive a jury trial; and (3) whether to testify. *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). Strategic decisions such as filing motions, selecting jurors, and calling and examining witnesses are the sole province of the lawyer exercising "professional skill and judgment." *State v. Carter*, 270 Kan. 426, 438-39, 14 P.3d 1138 (2000). Therefore, an attorney does not need to ask a defendant's permission when making strategic decisions. See *Brown*, 305 Kan. at 425. But strategic decisions based on less than a complete investigation of the relevant facts and legal options are reasonable only to the extent that reasonable professional judgment supports the limitation on the investigation. *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018).

Here, Marshall fails to argue what pretrial motions his trial attorney should have filed or, if they had been filed, what effect they would have had on his decision to waive his right to a jury trial and/or any related effect on his rights on appeal. An issue not briefed by the appellant is waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Further, nothing in the record indicates Marshall's trial attorney failed to exercise reasonable professional judgment when he decided not to file pretrial motions. Not all cases, given the facts, justify the filing of pretrial motions.

Next, we consider Marshall's trial attorney's decision not to pursue a voluntary intoxication defense if the case went to trial. Voluntary intoxication may be used as a defense to negate the intent element of a specific intent crime. See *State v. Seba*, 305 Kan. 185, 211, 380 P.3d 209 (2016). At the time of his trial, Marshall was charged with aggravated burglary, aggravated assault, and misdemeanor theft. Aggravated burglary and misdemeanor theft are specific intent crimes. See *State v. Harper*, 235 Kan. 825, 827, 685 P.2d 850 (1984); *State v. Cooper*, 20 Kan. App. 2d 759, 761, 892 P.2d 909 (1995). Therefore, voluntary intoxication was a potential defense for two of Marshall's charges.

However, the record shows Marshall's trial attorney made a strategic decision not to bring a voluntary intoxication defense if the case went to trial. He based his decision on the specific facts of the case, the strength of the State's evidence, and after discussing the case with Marshall on several occasions.

Finally, Marshall's claim the district court should have considered his trial attorney's testimony indicating that he "had no defense in mind other than jury nullification" is not supported by the record. His trial attorney testified that, based on the strength of the State's evidence, Marshall was "basically hoping for jury nullification" if the case went to trial. Jury nullification occurs when a jury knowingly enters a verdict contrary to the evidence or the law. See *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173

8

P.3d 1167 (2008). Juries have the power to nullify, but a criminal defendant does not have the right to argue jury nullification. See *State v. Boothby*, 310 Kan. 619, 630, 448 P.3d 416 (2019) ("[W]e have long held that an instruction telling the jury that it may nullify is legally erroneous."). The record shows Marshall's trial attorney did not intend to argue jury nullification if the case had gone to trial.

The district court's finding Marshall's trial attorney provided competent counsel is supported by the record, especially considering Marshall failed to stay in contact with his attorney while out on bond to help with his defense. The district court did not abuse its discretion.

*Marshall was not coerced into entering his plea.*

Marshall argues substantial competent evidence does not support the district court's finding under the second *Edgar* factor (misled, coerced, mistreated, or unfairly taken advantage of). He claims the one-day continuance to gather witnesses was insufficient time and left him with no option but to work out a plea deal. In other words, he was coerced to enter his plea. But a review of the record does not support his claim.

The record shows Marshall had the opportunity to inform his trial attorney about witnesses he wanted to present at trial but failed to do so. Marshall's attorney contacted him at the jail within 10 days of his arrest. Marshall insisted to his attorney and later in a letter to a district judge that he had no recollection of the events that gave rise to the charges. Presumably this would include any recollection regarding witnesses. In fact, during the hearing on his motion to withdraw his plea Marshall could not recall who the witnesses would have been or if he told his attorney who they were prior to his preliminary hearing or any time before he was released.

Marshall's attorney testified he met with Marshall five times, not including the times they met in the courtroom, while he was in custody. He documented each meeting in his notes. He testified witnesses were discussed but only in terms of mitigation at sentencing—witnesses to verify Marshall had a drug problem. Marshall's interest expressed to his attorney from the beginning was to enter a plea. He told his attorney that he wanted to posture as if he was going to trial to get a better plea offer. He never expressed an interest in going to trial. He wanted to hold out for a level 7 felony or less with no registration requirement. A preliminary hearing was held on September 1, 2017, in an effort to obtain a better plea offer and evaluate the evidence against him, since he had no recollection of the event. Marshall was able to evaluate all the evidence against him at the preliminary hearing.

Marshall bonded out of jail after the preliminary hearing and two months before the December trial date. Marshall did not contact his trial attorney and his trial attorney was unsuccessful in contacting him after his release. On the trial date, Marshall's attorney argued zealously for a continuance on behalf of his client. He stated several reasons for the request including the fact that he had not had an opportunity to speak with his client since his release. The State objected to any continuance because its witnesses were due to leave the country. The court continued the trial for one day to give Marshall and his attorney time to gather witnesses or explore his options for a plea deal. Therefore, any difficulty Marshall and his attorney might have experienced in gathering witnesses before trial was created by Marshall. Marshall had plenty of time to gather witnesses prior to his trial date. He admitted that he had simply failed to do so while he was out on bond. Moreover, neither at the hearing or in his brief does Marshall identify who his witnesses were and how their testimony would have benefited his defense.

Marshall and his attorney were able to negotiate a plea agreement which resulted in Marshall pleading guilty to a level 5 person felony, with all other charges dismissed. In addition, the State agreed to dismiss the charges in an unrelated case—a presumptive

prison felony for possession of methamphetamine. The State agreed to recommend the low sentence on the sentencing grid, to allow Marshall to make any departure motions he wanted, and not require registration. The parties agreed that Marshall was a criminal history category A. There was substantial competent evidence to support the district court's findings Marshall was not coerced into entering a plea by the denial of his continuance request.

Marshall also claims the district court erred under the second *Edgar* factor when it failed to find his trial attorney violated his duty of confidentiality under Rule 1.6 of the KPRC (2019 Kan. S. Ct. R. 302). Marshall argues that this unlawful disclosure was the reason the court denied his continuance request, which resulted in his duress and ultimate coercion to enter a plea. The district court found that the exchange of information with the court regarding the lack of contact between Marshall and his attorney did not violate any attorney client confidentiality requirements. Marshall fails to cite any authority that such a disclosure violates the code of professional responsibility for lawyers or requires a court to allow withdrawal of a plea. It is hard to imagine how his attorney could have effectively argued for a continuance without disclosing the reasons the defendant thought a continuance was necessary—insufficient opportunity to speak with his attorney and round up witnesses. Marshall fails to meet his burden to establish the district court abused its discretion in finding there was no violation of attorney client privilege necessitating the withdrawal of Marshall's plea.

In sum, the district court did not err by finding Marshall was not coerced into entering his guilty plea.

*Marshall's criminal history score is A.*

Generally, this issue requires us to interpret the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2018 Supp. 21-6801 et seq. Interpretation of a statute is

a question of law subject to unlimited review. See *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). It is the State's burden to prove an offender's criminal history score by a preponderance of the evidence. See K.S.A. 2018 Supp. 21-6814; *State v. Ewing*, 310 Kan. 348, Syl. ¶ 4, 446 P.3d 463 (2019). The district court's finding as to whether the State met its burden must be supported by substantial competent evidence. 310 Kan. 348, Syl. ¶ 4. Therefore, this court reviews the district court's factual findings under the substantial competent evidence standard.

Under the KSGA, "the sentencing guidelines . . . shall be applicable to felony crimes committed on or after July 1, 1993," except as otherwise provided. K.S.A. 2018 Supp. 21-6802(c); see K.S.A. 2018 Supp. 21-6804(a) (KSGA nondrug felony sentencing grid). When calculating a defendant's criminal history score, the district court lists the defendant's prior convictions and classifies each conviction as a felony or a misdemeanor conviction and as a person or nonperson offense. K.S.A. 2018 Supp. 21-6810. For post-KSGA Kansas convictions, person and nonperson offense classifications are included in the Kansas criminal statutes. *Keel*, 302 Kan. at 574-75.

Since the Legislature added the person and nonperson classification of offenses, residential burglary under K.S.A. 21-3715(a) (now repealed) and K.S.A. 2018 Supp. 21-5807(a)(1) has generally been classified as a person felony. However, for a 10-month period—from July 1, 2016, to May 18, 2017—the Legislature classified residential burglary as a nonperson crime. Compare K.S.A. 2016 Supp. 21-5807(c)(1)(A)(i) with K.S.A. 2017 Supp. 21-5807(c)(1)(A)(i).

Therefore, at the time of Marshall's current crime of conviction—March 2017—residential burglary was classified as a nonperson felony. Marshall argues *Keel* controls and the district court should have classified his five prior post-KSGA residential burglary convictions as nonperson felonies because the version of residential burglary in effect at

the time of his current crime of conviction—K.S.A. 2016 Supp. 21-5807—classified residential burglary as a nonperson felony.

Marshall is wrong. *Keel* does not control; *Dickey* does. The Kansas Supreme Court in *State v. Dickey*, 301 Kan. 1018, 1035, 350 P.3d 1054 (2015), held a pre-KSGA juvenile adjudication for burglary, which did not include a requirement the burglarized structure be a dwelling as an element of the offense, is a nonperson felony. The *Dickey* court found the classification of a prior residential burglary conviction or adjudication for criminal history purposes is specifically controlled by K.S.A. 2018 Supp. 21-6811(d). 301 Kan. at 1035.

K.S.A. 2018 Supp. 21-6811(d)(1) and (2) provide a prior burglary conviction or adjudication will be classified for criminal history purposes as: (1) a person felony if the prior burglary conviction or adjudication involved a *dwelling* under K.S.A. 21-3715(a) (prior to its repeal) or K.S.A. 2018 Supp. 21-5807(a)(1); or (2) a nonperson felony if the prior burglary conviction or adjudication did *not involve a dwelling* under K.S.A. 21-3715(b) or (c) (prior to its repeal) or K.S.A. 2018 Supp. 21-5807(a)(2) and (a)(3).

However, in *Dickey*, the court ultimately determined the classification of Dickey's pre-KSGA burglary adjudication as a person offense was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). *Dickey*, 301 Kan. at 1039. Dickey's pre-KSGA burglary adjudication under K.S.A. 21-3715 (Ensley 1988) did not distinguish between burglary of a dwelling or nondwelling. Since the classification of burglary as a person offense under K.S.A. 2018 Supp. 21-6811(d)(1) depends on whether it involved a dwelling, the district court engaged in constitutionally prohibited fact-finding when it found Dickey's prior adjudication involved a dwelling. See *Dickey*, 301 Kan. at 1039-40.

By contrast, when the Legislature enacted the KSGA, the Kansas burglary statute specifically distinguished burglary of a dwelling from burglary of a nondwelling. Compare K.S.A. 21-3715 (Ensley 1988) with K.S.A. 1993 Supp. 21-3715(a). Therefore, for a defendant convicted under the post-KSGA burglary statutes—in which "dwelling" is included as an element of the offense—the district court does not engage in impermissible judicial fact-finding when it classifies the defendant's prior residential burglary conviction as a person felony under K.S.A. 2018 Supp. 21-6811(d)(1) as long as it is clear from the record the defendant was convicted under the section of the burglary statute in which "dwelling" is an essential element of the offense.

Here, Marshall had five post-KSGA burglary convictions under K.S.A. 21-3715(a) and K.S.A. 2013 Supp. 21-5807. The PSI showed four of those five convictions were for "residential" burglary under K.S.A. 21-3715(a). But the PSI failed to specify whether his 2014 burglary conviction was a "residential" burglary under K.S.A. 2013 Supp. 21-5807(a)(1) or nonresidential burglary under K.S.A. 2013 Supp. 21-5807(a)(2). Even so, if a defendant has three or more prior person felonies, he or she will have a criminal history score of A. See K.S.A. 2018 Supp. 21-6809 (offender's criminal history category is A when "[t]he offender's criminal history includes three or more adult convictions or juvenile adjudications, in any combination, for person felonies"). Therefore, even without counting Marshall's 2014 burglary conviction, he still has a criminal history score of A based on four post-KSGA Kansas convictions under K.S.A. 21-3715(a).

Thus, the district court correctly found Marshall's criminal history score was A.

Affirmed.